Burks, J.
Upon this record, there is no doubt, that at the time the execution of the relator was placed in the hands of the deputy sheriff (Doss), the execution debtor (McCartney) was the absolute owner and in possession of personal property sufficient to satisfy the execution; nor can there be any doubt that the sheriff is liable to the relator for the full amount of the execution, unless he has been excused from making seizure and sale of the property by the failure or refusal of the plaintiff in the execution to give the indemnifying bond which was recquired of him.
*43 Whenever an officer levies, or is required to levy, an •execution on property, and a doubt shall arise whether the .property is liable to the levy, he may give notice to the plaintiff, his agent or attorney at law, that an indemnifying bond is required in the case; and if such bond, as is prescribed by the statute, be not given within a reasonable time after such notice, the officer may refuse to levy on such property, or may restore it to the person from whose possession it was taken, as the case may be. Code of 1873, §§4,5.
Were the circumstances in this case sufficient to authorize the officer to demand of the plaintiff an indemnifying bond under the statute before he could be required to make the levy ? Did a doubt arise, a reasonable doubt, whether the property of the debtor was subject to levy under the execution? We are of opinion that such a doubt did arise.
The execution bore date on the 11th day of June, 1870; was placed in the officer’s hands on the 11th day of the next month (July), and was returnable on the fourth Monday in August following. When the officer went to McCartney’s house to levy it, McCartney informed him that “ he was entitled to the benefit of the homestead law as provided by the constitution of Virginia; that he claimed it, and claimed his personal property to the extent it would go.” It seems that he had not then set apart (he property •as exempt in the mode prescribed by the statute, because, :as he stated, he had no form for the proceeding, and knew •of none, and he inquired of the officer if he knew of any, -insisting at the same time upon his claim.
This claim the officer made known to the plaintiff, and ■demanded of him an indemnifying bond, which the plaintiff refused to give; in consequence of which refusal there were no seizure and sale of the property.
At the time the execution was issued, although it was for the collection of a debt contracted prior to the adop *44 tion 0f ^he constitution, the debtor was entitled, under ’ ’ Article 11, §1, of that instrument, if valid, to hold the in question exempt from levy. The constitution had been adopted the previous year (1869), and the general assembly was holding its first session thereunder; and in pursuance of §5, Article 11, had passed an act to carry into effect the‘homestead and exemption provisions, which act was approved June 27, 1870, sixteen days after the execution was issued in this case, and fourteen days before it was placed in the officer’s hands.
There was more or less diversity of opinion among the judges of the courts and the members of the bar as to the validity of the exemptions, affecting antecedent debts and contracts, provided by the constitution, and the legislative enactment to give effect to such exemptions; and the invalidity of such exemptions was never finally and author- . itatively determined until the decision of this court in the Homestead Cases, rendered on the 13th day of June, 1872, and reported in 22 Gratt. 266, et seq.
Judge Christian, in delivering the opinion of the court, in that case, adverting to the unsettled state of the law on the subject, and the inconveniences attending it, observed that “ it was much to be regretted that a subject of such general interest and importance should not, at an earlier day, have received the final adjudication of the supreme tribunal constituted by law to pronounce the supreme law of the state, instead of being left to the decision of inferior courts, some of which have sustained the validity of the homestead exemption, while others have pronounced against it—thus leaving the law unsettled, and the people,, both debtor and creditor, in doubt as to their rights and liabilities.”
In other states, also, which adopted constitutions after the termination of the late war, containing provisions for exemptions similar to those in the constitution of this state, these doubts prevailed, giving rise to litigation which was *45 pursued through various channels into the supreme court of the United States. See Gunn v. Barry 15 Wall. U. S. R. 610; Edwards v. Kearsey, 96 U. S. R. (6 Otto), 595
But it is argued by the learned counsel for the defendant in error that although the right to the exemption granted by the constitution to the householder or head of a family, yet, in order to secure the benefit of it, he must comply with the provisions of the statute enacted to give it effect; he must select and set apart the property claimed in the mode prescribed by the statute. This may be true. He may never assert his right. It is optional with him to assert it or not. He may waive the benefit of it, and thus be barred. It has been so held by this court. Reed and others v. Union Bank of Winchester, 29 Gratt. 719.
But it cannot be said that he intends to waive the benefit of it or not to claim it, when he expressly declares the contrary intention.
If the officer in this case had proceeded to levy the execution on the property claimed, the debtor, if entitled to the exemption, had his remedy under the statute to seeure it. Code of 1873, ch. 188, §§ 16, 17. As he had declared.his intention to claim it, he would, no doubt, have carried that intention into effect in the mode provided by the statute, if a levy had been made. When applied to by the sheriff with the execution, he had not made his declaration of intention by deed as required by the statute, because of his ignorance of the necessary proceeding, the statute having been approved only a short time previous ; but he then made kuown his claim and his intention to assert it; and if a levy had been made, he would, uo doubt, have consulted counsel and under advice, would have pursued the requirements of the sections of the act already cited. The fact is, he did file his deed of homestead within a short time after the return day of the execution; thus manifesting his good faith in the assertion of his claim in the first instance.
*46 At all events, under the peculiar circumstances of this-case, we are of opinion, that when the officer was required levy the execution in his hands, there was a doubt whether the property of the debtor was subject to levy,. sufficient to authorize him to require for his protection.an indemnifying bond precedent to the levy. It is fair to-infer, that the plaintiff himself entertained such doubt,-, for, it does not appear that when the indemnifying bond was demanded, he specially directed a levy, but he seems to have left the officer to be guided in his conduct by the-exigency of -the writ; nor did he institute his action until after the lapse of more than three years from the-time the alleged cause of action arose, nor until after the-decision in the “Homestead Cases,” already referred to, and the report of that decision in 22 Grattan.
Under the circumstances, if he desired to have the property of his debtor levied upon, he ought to have given-the indemnifying bond, and taken upon himself the risk of damage incurred by seizure and sale, and not sought to-impose it upon the officer, who seems to have acted prudently and in good faith throughout. .
The loss of his debt was the consequence of his own-neglect or fault, and the law will not visit it upon the officer, who was free from blame.
The instructions given to the jury, at the instance of the plaintiff, are in conflict with the views expressed in this-opinion, and the second instruction offered by the defendant and rejected by the court, is in harmony with those views.. The latter should have been given and the former refused.
If there was any error in admitting; as evidence the-answer of the witness, John F. Jones, set out in the defendant's first bill of exceptions, it could not have prejudiced the defendants in the trial, because there was evidence before the jury on the part of the-defendants to the-same effect.
*47 The judgment of the circuit court must be reversed and annulled, the verdict of the jury set aside, and the cause remanded for a new trial in conformity with the expressed in this opinion.
The judgment was as follows :
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in a written opinion filed with the record, that the said judgment is erroneous: it is therefore considered and ordered, that the said judgment be reversed and annulled, and that the plaintiff in error recover against the defendant in error, Paris "V. Jones, administrator de bonis non with the will annexed of John Leffell, deceased (the relator in this action), his costs by him expended in the prosecution of his writ of error and supersedeas aforesaid here, to be levied of the goods and chattels of his testator in the hands of the said defendant in error to be administered; and it is further considered and ordered that the verdict of the jury be set aside, and this cause be remanded to the said circuit court of Craig county for a new trial, and for further proceedings to be had therein, in order to final judgment in conformity with the views expressed in said written opinion: all of which, together with a copy of said written opinion, is ordered to be certified to the said circuit court.
Judgment reversed.